Robert Martin of Sidley Austin on behalf of the petitioner, Renee Franzy. I would like to reserve three minutes for rebuttal. Thank you. And may it please the court. For three reasons, this court should grant Mr. Franzy's petition for review, hold that he qualifies for deferral of removal under the Convention Against Torture, and remand the case to the BIA. First, the BIA committed legal error in applying its specific intent definition to Mr. Franzy's cat claim. The definition used by the BIA is a legal loophole designed to excuse torture. It is contrary to the commonly recognized definition of specific intent, and that same definition was expressly rejected by the Department of Justice in 2004, the same department of which the BIA is a part. Second, the record compels the conclusion that indefinite detention in the abhorrent prison conditions in Haiti will cause severe pain and suffering. And third, the record compels the conclusion that the Haitian government's indefinite detention of Mr. Franzy in Haiti's prisons is for a prescribed purpose. That is, it is designed to punish Mr. Franzy for the crimes he committed in the United States. Crimes for which he has already served a three-year prison sentence and completed. As an initial matter, this Court has jurisdiction to consider all of those claims. Kennedy. What – how does – if they are punishing him for crimes committed in the United States, how does that fit in with the definition of torture? As required in CAT, there are several specific elements, Your Honor, and one of those is that the pain and suffering has to be imposed for a prescribed purpose. Some of the – you know, those – one specific element in the regulation states that if it – the punishment is imposed to punish – I'm sorry – if the severe harm and suffering is imposed to punish him for an act that he has committed, I would say by the plain language of the regulation, it is a punishment. Punishing him or placing him in a Haitian prison because of a crime he committed, it – by the plain language of that regulation, he is being punished for an act that he has committed. Returning to the jurisdiction argument, this Court does have jurisdiction over all three of these claims. In three cases recently decided by this Court, the Court has determined that deferral of removal claims under CAT are always decided on the merits and none of the jurisdiction stripping provisions of the immigration statutes would apply to such a claim. Turning then to the specific intent issue, what Mr. Franci is requesting this Court to adopt is a specific intent definition that allows a finding of specific intent where the actor knows a result, is practically certain to follow from his deliberate act, regardless of the actor's desire. Well, in two cases, this Court has – has all – has deferred to J.E.'s interpretation of specific intent in the – in the prison context. And the second and the third circuits have done the same. Isn't this matter settled? This matter is not settled in the Ninth Circuit.  And let's talk about the theogene. Why didn't that – I think the language was, was it said J.E. was legally sound? Theogene used – Or not unreasonable. Not unreasonable is what it said. It prefaced that it's two-sentence discussion of NRA J.E. with the term, you know, insofar as the petitioner challenged NRA J.E., we are required to defer to NRA J.E. Two points as to that. First, this Court is not required to defer to NRA J.E. As a general matter, Chevron deference does apply to the BIA opinions. Chevron deference, however, is not absolute. Second – Well, what you're saying then is theogene got it wrong. But the question that we have to face is – Correct. Does it bind us? Not necessarily correct, Your Honor. What I'm saying about theogene is that this Court considered theogene and whether or not to defer to it in a two-sentence paragraph in which – in a case in which whether or not NRA J.E. was correctly decided was not at issue. The petitioner in NRA J.E. merely stated that it should not apply primarily because of a retroactivity argument. NRA J.E. was decided after he was granted relief, I believe either before the I.J. or the BIA. The BIA then reopened the case and applied to NRA J.E. The second point, alternatively, if the Court even – it's actually not even an alternative argument, but the Court had no occasion to consider whether deference to NRA J.E. was appropriate in light of the 2004 express rejection of NRA J.E. specific intent definition, because the Department of Justice did not reject that definition until 2004. NRA J.E. was decided in 2003. So the argument regarding whether deference is appropriate to NRA J.E. because of later events and that later rejection of the standard by the Department of Justice was never presented to that Court. The other case I believe that you referenced, Judge Mills, was Villegas, which also did not consider this question of which specific intent definition to apply. Villegas considered whether a general intent standard should be applied to a CAT claim. Villegas rejected that, and rightly so, because the regulation states the specific intent is required. It then came – it then – the Court then stated that specific intent is found where the actor intends the actual consequences of his conduct, as distinguished from the act that causes these consequences. A standard looking at just the act that causes these consequences is a general intent standard. The first standard that its definition intends the actual consequences of its conduct can be determined two ways. One, by the conscious desire of the actor. Or two, where the actor knows the result is practically certain to follow from his conduct. That is the standard that we are asking the Court to adopt. That is the standard that's been recognized by scholars such as Professor LaFave. And there's also a standard that's been recognized by other courts as, you know, applicable to CAT. The reason that this Court – if I may remain – reserve the remainder of my time, Your Honors. Thank you. Are you doing this for both as well? Yes, I am, Judge Wolk. Thank you for asking. Thank you. Good morning. May it please the Court. My name is Jocelyn Wright. I'm here on behalf of Respondent, the United States Attorney General. Could you pull that microphone down just a little? Yeah, sure. Sorry. Petitioner has formulated the issue before this Court as whether the Haitian government's indefinite detention of criminal deportees amounts to torture given the prevailing prison conditions in that country. But this Court, and Theogene more recently in Villegas, as well as the Board in matter of JE, have already answered that question in the negative. That's my problem. You know I was on the Theogene panel. Among other things, Chevron deference wasn't even argued in that case. So if you go back and get the briefs, you'll see no one argued Chevron deference. But secondly, it's based on a factual record that stopped, I think, in 2001. I think that's right. And JE was based on a factual record even before that. And a lot has happened. And I'm just thinking that maybe all of the reports of the country conditions and the prison conditions over time have, as one report said, worsened. So that back then, the government of Haiti wasn't knowingly putting these detainees into the prison with the intent that they would be killed by other detainees or police officers or officials of the prison. And that after it occurs for a period of how many years are we talking about now? Seven years. And it repeatedly happens that at some point, it borders on a certainty to the degree that it would amount to intent. Two points, Your Honor. First of all, the Board in this case specifically found or specifically noted and determined that Petitioner had not made any effort to distinguish his case from matter of JE. And so to the extent that there's an argument, and I don't think there's one that has ever been made, as there was in the last case, that the record in this case is different from JE and the conditions have worsened, that has never been made to the Board. And, in fact, the Board said Petitioner's case has not, Petitioner hasn't made any effort to distinguish his case from matter of JE. Therefore, matter of JE is controlling. And before this Court, Petitioner has not chosen to challenge that aspect of the Board's decision. Instead, Petitioner has chosen to argue that matter of JE instead was wrongly decided. That's a completely different claim. So I don't think that issue is before the Court. And secondly, the record in this case does have more recent country conditions as opposed to the record in matter of JE. But those conditions, I think, are consistent with what the Board has found in matter of JE. For example, there are reports that the International Committee of the Red Cross, the Haitian Red Cross, continue to be able to have, and other human rights and non-governmental organizations, continue to have free access to any of the Haitian prisons and that they're able to help out the prisoners if necessary. In fact, there is an exhibit in the record from a group called Alternative Chance, which was founded by a Haitian-based U.S. citizen, to specifically help criminal deportees who were deported from the United States and to help them readjust and become fruitful citizens of the Haiti. And so there are continued efforts to keep the country, the prison conditions better. They're certainly not made to be worse. And so to the extent that the specific intent requirement, which we argue is necessary and is required by the statute, and which this Court has found in Villegas as well as the Third Circuit in Pierre more recently, has found to be a necessary component of the statutory, of the regulatory requirement under the statute, then the country conditions being worsened are not necessarily dispositive of this case. Well, how about that provision in the DOJ memorandum? Is that transferable to this Court? Well, our argument, Your Honor, first of all, we do have an argument regarding jurisdiction on that case. Now, I don't contest that the issue regarding standard has been exhausted. And so the Court would have jurisdiction to review the specific intent argument. The specific argument reliance on the OLC 2004 memorandum, however, was never brought before the Board or the immigration judge, even though it was well in existence before those two, before his case was before either the IJ or the Board. And so under this Court's decision in independent powers, and I apologize, I don't have the site before me. I will supply it to the Court if necessary. Well, I mean, to bring that to the attention of the Board. It would have been a motion to reopen. I mean, it was in existence. And so if he was being assisted by the FARAP, I can't remember what it stands for, but it was an organization that assisted him with his brief before the agency. They could have made that argument, but they didn't. And so to the extent that that specific argument wasn't exhausted. I think the presiding judge's question goes to the proprietor. I mean, how are you going to make that available? And why should you? That's no more than an intra-agency determination or policy or whatever you want to call it. Yes. And that's the second part of my argument, Your Honor. The first part is that. What propriety is there is that in giving it to the Board? Well, the first part is that the agency has the right to make that argument. But they forfeited that specific issue by not arguing it specifically. Not failure to exhaust, but forfeited that argument. Evidence. So I guess the problem I have with it, it's a pronouncement by the OLC, which has some force of law. And the OLC is a Department of Justice. And I'm not sure of the time of this, but I think so was immigration at that time. Right? Yes. So, I mean, now it's been moved to DHS, but it's part of the law that should be governing the BIA. Is the BIA still part of justice? Yes. Okay. So it's a piece of law that was available to the BIA, maybe not available to Mr. Franci. The point that I'm trying to make with that, without waiving our jurisdictional objection, I will address this. Well, to me, that's the force of law, so it's not like a factual issue. Well, first of all, the OLC memorandum wasn't construing the CAT regulations. It was construing a different portion of the statute, 18 U.S.C., I think, Section 234. It was construing the definition of torture. Yeah. Yes. But the OLC memorandum also said, but my point with that is that the Board is authorized to administer the CAT and interpret the CAT regulations, and so to the extent that the regulations present the question regarding specific intent, it certainly was well within the Board's authority to address that issue. Now, with respect to my second point, Petitioner is wrong in characterizing the OLC memorandum as, quote, unquote, repudiating the specific intent definition in JE. What the OLC memorandum did was it said that it was confronted with deciding three things. One, whether severity of physical harm rises to the level of torture, whether severity of mental harm rises to the level of torture, and third, regarding the specific intent issue. It decided and resolved the first two issues. When it got to the specific intent, however, the OLC memorandum specifically says that we do not believe it is useful to try to define the precise meaning of specific intent in Section 2340 of 18 U.S.C. And they did that because they said that in view of the President's directive that the U.S. not engage in torture, it would not be appropriate to rely on parsing the element of the specific intent element of the statute to approve as lawful conduct. That might otherwise be considered torture. The 2002 memo did exactly that, and the 2004 memo replaced the 2002 memo. Right, and the 2004 memo that replaced the 2002 memo was silent on specific intent. Stepping back from its earlier pronouncement, and probably for many reasons having more to do with the United States. But it didn't say either way what it was doing. All it did was it said we were not deciding the issue. Right. And so to the extent that the Board is authorized to decide the specific intent issue, given its authority to implement and administer the INA and DUCAT regulations, it was well within its authority to do so in this case. And that's the point that I was trying to make to Judge Mill's question. Now, with respect to the specific intent argument that we are advancing, this Court in VA, I guess, has specifically held recently that, yes, specific intent is a mandatory requirement under the CAT regulations, and that the Board in matter of JE was not the deference to that interpretation of the CAT regulations is necessary because matter of JE is not to be, and I'm quoting, lightly disregarded. So whether or not Theogene resolved that issue, and the government's position is that Theogene found that JE was not unreasonable and that it confronted an issue that was germane and considered it and resolved it in favor of affirming the decision in JE, then those two decisions, JE, I'm sorry, Theogene and Villegas, are sufficiently controlling and dispositive of Petitioner's arguments in this case. I see that my time is up. Unless the Court has any further questions. Do we have questions? Thank you. Thank you, Your Honors. A few points in rebuttal. One, Mr. Franci was represent, or Mr. Franci appeared before the AJ pro se, was represented by pro bono counsel before the BIA, and is now represented before this Court again by pro bono counsel. The issue regarding the definition of specific intent was raised before the BIA at AR 14, which was Mr. Franci's brief, where he specifically asked the BIA to adopt a specific intent definition to include those instances where suffering is an anticipated result of certain actions. The propriety of bringing up the DOJ 2004 memorandum before the BIA at that point, it was simply not an issue whether the BIA should defer to itself. The issue presented here, the argument, pardon me, presented here regarding the DOJ 2004 memorandum goes to whether Chevron deference is applicable to the BIA's decision. Only this Court would defer to the BIA per Chevron, not the BIA to itself. So there's no reason to raise that argument. It's effectively, the government is essentially taking the position that an argument can be waived as opposed to a claim or an issue. It would be a similar argument coming from them if they, because a case wasn't cited to the BIA below, that that same case could then not be cited to this Court. That's a ludicrous argument and I would submit is incorrect. The government also stresses in terms of the, whether or not torture is an issue, it stresses that non-governmental organizations such as the Red Cross have access to Haitian prisons. That is correct in the record, but that has absolutely no relevance to what is going on in the Haitian prisons. CAT looks to what the government actors are doing in this particular case. It does not ask whether that, it doesn't ask whether it's hidden, it just says, you know, what is the intent of the actors and what is occurring to cause the severe pain and suffering. So regardless of whether the Red Cross is there or not, that doesn't change the, change the issue in this case. Returning to theogene, the, Judge Wuerl, as you have mentioned before, you know, that the facts may have changed, or the facts likely have changed since then a number of reports are present in the record here that Mr. Franci submitted pro se, such as the State Department record and a record from the Citizenship and Immigration Office stating that conditions in Haitian prisons are absolutely horrible and do constitute, and exposure to those conditions could constitute severe pain and suffering. The fact of the matter here. Do those indicate any change from the situation that pertained in 2001? I'm not sure, and I'd have to go back to the record on that, Your Honor. I haven't compared the facts that were present in Ray J. I don't think, I mean, I think the case is made that the conditions are horrible. I don't know whether they're even more horrible than they used to be. But I, in other words, the specific intent is still required, I think. Mr. Villegas talks about specific intent and says that it's not enough that the suffering be foreseeable. Yes, Your Honor. It has to be intended. And you're saying, well, it's enough if it's foreseeable that it's virtually certain to happen. Yes, Your Honor. I would argue that those are two different standards. One, reasonably foreseeable, or an act that may cause reasonably foreseeable results, I would argue that's a general intent standard. And that's not what is required by CAP. We don't dispute that. What we are arguing is that when a person, an actor has knowledge that when he commits an act, a result is practically certain to occur that is in itself sufficient to establish specific intent. That is what occurs in criminal courts across the country every day. You do not have to have an admission from the actor that he consciously desired the result. You can prove specific intent by showing that he knew, or he's practically certain, that the result would occur. That should be sufficient. I see that my time is up, Your Honor. Thank you very much. Thank you very much. So, Franzi v. Encasa was submitted.
judges: Canby, Wardlaw, Mills